# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARMANDO TORRES GARCIA, | ) 1:11-cv-2037-BAM |
| Plaintiff, | ) **ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT** |
| v. | ) |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) |
| Defendant. | ) |

## **BACKGROUND**

Plaintiff Armando Garcia ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for supplemental security income benefits pursuant to Title XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Magistrate Judge Barbara A. McAuliffe.

# FACTS AND PRIOR PROCEEDINGS[1]

On January 9, 2009, Plaintiff filed his first application for supplemental security income benefits under Title XVI, of the Social Security Act (the Act). AR 18. Plaintiff's application was denied initially and on reconsideration, and Plaintiff requested a hearing before an Administrative Law Judge (ALJ). AR 64. ALJ Judson Scott held a video hearing and issued an order denying benefits on July 18, 2011, finding Plaintiff was not disabled. AR 18-25.

**Hearing Testimony**

ALJ Scott held a hearing on June 22, 2011 in San Francisco, California. AR 18. Plaintiff appeared and testified in Bakersfield, California. Plaintiff was represented by attorney Sylvia Lopez and assisted by an interpreter. AR 18. Vocational Expert ("VE") Lawrence S. Hughes and Medical Experts Shakil Mohammed, M.D., Ph. D, and Eric Puestow, M.D. also testified. AR 18.

Plaintiff is an unemployed fifty-six year old. He is morbidly obese and suffers from poorly controlled hypertension, sleep apnea, and vision problems. Plaintiff is also a recovering alcoholic but had his last drink in 2003. AR 367-68. At the hearing, Plaintiff stated that he has little to no education but can read and write somewhat in Spanish. AR 371. Plaintiff last worked in 2004, but he stopped working due to problems with his high blood pressure. AR 369.

When asked about his impairments, Plaintiff said he gets headaches caused by his hypertension. AR 370. To help alleviate his high blood pressure, Plaintiff takes medication daily with little success. AR 370. His doctors have advised him that in order to improve his blood pressure he should try to walk more, but Plaintiff admitted that he walks infrequently because it makes him tired. AR 370-71. Plaintiff also said his left knee bothered him but that he has had no additional x-rays taken. AR 372-73. He saw his physician for sleep apnea, and his physician referred him for a sleep study. AR 374-76. During the sleep study, Plaintiff slept easily with a Bipap mask. However, Plaintiff testified that he does not use a machine to help him sleep, and that his physician told him he needed to lose weight to help with this problem. AR 376. Plaintiff said he

---

[1] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

tried to lose weight and had begun dieting but was having difficulty and had recently gained five pounds. AR 370, 376-77.

Plaintiff's medical experts, internist and endocrinologist, Eric Puestow, M.D. and psychiatrist Shakil Mohammed, M.D., Ph. D., also testified. AR 380-395

Dr. Puestow testified that he reviewed Plaintiff's records and noted that he considered Plaintiff's history of uncontrollable high blood pressure but did not see any organ damage. AR 381. He opined that Plaintiff's high blood pressure could cause headaches, but it was controllable with medication and a proper diet, and did not affect Plaintiff's ability to work. AR 381, 383-84. Dr. Puestow also noted that Plaintiff was morbidly obese and had a history of alcoholism but that he had been sober for eight years. AR 381-82. He said that, although Plaintiff alleged he had Valley Fever, he found no supporting documentation in the record. AR 382. Dr. Puestow opined that Plaintiff had some mild non-obstructive coronary disease, which would not cause any symptoms or functional limitations, and that Plaintiff's chest pain and shortness of breath could not be explained on this basis. AR 168, 382. He also found that Plaintiff had some mild degenerative disease of the thoracic and lumbar spine, normal for an individual of Plaintiff's age, which might cause local discomfort but would not carry any significant functional limitations. AR 383. With respect to Plaintiff's arthritis, Dr. Puestow did not find any documented joint pathology, and he opined that Plaintiff's knee should resolve itself with time and conservative treatment. AR 383. Overall, Dr. Puestow opined that Plaintiff could lift more than 50 pounds occasionally and 25 pounds frequently, occasionally climb, bend, stoop, kneel, crouch, and crawl, but should not have concentrated exposure to hazards on the job. AR 387-88.

Psychiatrist, Shakil Mohammed, M.D., Ph.D., also testified at Plaintiff's hearing. AR 42-44, 390. Dr. Mohammed testified that Plaintiff is not suffering from any psychiatric impairment. AR 391. He noted that there were no mental health documents of any kind in the record and that Plaintiff stated he did not suffer from any mental problems, had never been hospitalized for mental illness, and was not taking any psychiatric medications. AR 256, 390-91.

Thereafter, the ALJ elicited the testimony of vocational expert Hughes. AR 394. The VE classified Plaintiff's past work as an auto mechanic as medium, skilled work (specific vocational

preparation (SVP) of 7). AR 366, 394. VE Hughes was asked to consider a hypothetical worker of Plaintiff's age, education, and work experience who is capable of performing medium work; was limited to occasional postural activities; could not perform tasks requiring very fine detailed work or constant close work; could perform simple, repetitive, one to two step tasks due to education; could have frequent contact with coworkers and supervisors, and occasional contact with the public in Spanish; could only perform jobs with limited reading and writing; and was limited to low stress jobs, defined as those with few changes in the work setting with few decisions required. AR 395. VE Hughes testified that this individual could not perform Plaintiff's past work because the skill level and visual requirements from his past job were too high. AR 395.

However, VE Hughes testified that this individual could work in the other representative occupations of laundry worker, vehicle cleaner, and food preparation worker. AR 395-97. VE Hughes further explained that the job of a laundry worker is often a sit/stand position, and that even if the additional limitation to avoid hazards, as defined by Dr. Puestow, were added to the hypothetical question, this individual could still perform all three jobs. AR 399, 402.

**Medical Record**

The entire medical record was reviewed by the Court. AR 64-364. The medical evidence will be referenced below as necessary to this Court's decision.

**ALJ's Findings**

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff did not meet the disability standard. AR 18-25.

More particularly, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his application date of January 9, 2009. AR 18. Further, the ALJ identified several severe physical impairments including poorly controlled hypertension, morbid obesity, obstructive sleep apnea, episodic dizziness, alcohol abuse and alcoholism in sustained remission, pre-patellar bursitis of the left knee, and reduced bilateral visual acuity. Nonetheless, the ALJ determined that the severity of the Plaintiff's impairment did not meet or exceed any of the listed impairments. AR 22.

Based on his review of the entire record, the ALJ determined that Plaintiff has the residual functional capacity ("RFC") to perform medium work involving simple repetitive tasks. The ALJ

determined that Plaintiff could lift/carry 25 pounds frequently and 50 pounds occasionally; sit for 6 hours in an 8-hour day; stand/walk for 6 hours in an 8-hour day; occasionally perform postural activities; could not perform fine detailed work or constant close work based on visual acuity limitations; could perform simple, repetitive one to two step tasks; was limited to frequent contact with coworkers and supervisors, and occasional contact with the public in Spanish only; could perform limited required reading and writing; and could only perform low stress jobs involving few changes to the work or its setting, and which required few decisions.  AR 22.

Next, the ALJ found that Plaintiff was unable to perform any past relevant work, but based on Plaintiff's age, education, work experience, and RFC, the ALJ determined that significant jobs existed in the national economy that Plaintiff could perform.  AR 23.  The ALJ therefore concluded that Plaintiff was not disabled as defined under the Act.  AR 24-25.

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence.  42 U.S.C. § 405 (g).  Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance.  *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975).  It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson*, 402 U.S. at 401.  The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion.  *Jones v. Heckler,* 760 F.2d 993, 995 (9th Cir. 1985).  In weighing the evidence and making findings, the Commissioner must apply the proper legal standards.  *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988).  This Court must uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence.  *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

**REVIEW**

In order to qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c (a)(3)(A). A claimant must show that he or she has a physical or mental impairment of such severity that he or she is not only unable to do his or her previous work, but cannot, considering his or her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

Here, Plaintiff argues that the ALJ's findings are not supported by substantial evidence and are not free of legal error because the ALJ erred: (1) by improperly evaluating his subjective complaints and (2) by relying on the vocational expert's flawed testimony.

**DISCUSSION**

*1.    Plaintiff's Credibility*

Plaintiff first contends that the ALJ erred in assessing his credibility. (Doc. 18 at 5).

An ALJ is not "required to believe every allegation of disabling pain" or other non-exertional requirement. *Orn v. Astrue*, 495 F.3d 625, 635 (9th Cir. 2007), *quoting Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). But if he or she decides to reject a claimant's pain testimony after a medical impairment has been established, the ALJ must make specific findings assessing the credibility of the claimant's subjective complaints. *Ceguerra v. Secretary of Health and Human Services*, 933 F.2d 735, 738 (9th Cir. 1991). *See also Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991). "[T]he ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834, *quoting Varney v. Secretary of Health and Human Services*, 846 F.2d 581, 584 (9th Cir. 1988). He or she must set forth specific reasons for rejecting the claim, explaining why the testimony is unpersuasive. *Orn*, 495 F.3d at 635; *see also Robbins v. Social Security Administration*, 466 F.3d 880, 885 (9th Cir. 2006). The credibility findings must be

"sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002).

When weighing a claimant's credibility, the ALJ may consider the claimant's reputation for truthfulness, inconsistencies in claimant's testimony or between his testimony and conduct, claimant's daily activities, claimant's work record, and testimony from physicians and third parties about the nature, severity and effect of claimant's claimed symptoms. *Light v. SSA*, 119 F.3d 789, 792 (9th Cir. 1997). The ALJ may consider "(1) ordinary techniques of credibility evaluation, such as claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008), *quoting Smolen v. Chater*, 80 F.3d 1273 (9th Cir. 1996). If the ALJ's finding is supported by substantial evidence, the Court may not second-guess his or her decision. *Thomas*, 278 F.3d at 959.

The Ninth Circuit has summarized the applicable standard:

> [T]o discredit a claimant's testimony when a medical impairment has been established, the ALJ must provide 'specific cogent reasons for the disbelief.' *Morgan*, 169 F.3d [595,] 599 [9th Cir. 1999] (*quoting Lester*, 81 F.3d at 834). The ALJ must "cit[e] the reasons why the [claimant's] testimony is unpersuasive." *Id*. Where, as here, the ALJ did not find "affirmative evidence" that the claimant was a malingerer, those "reasons for rejecting the claimant's testimony must be clear and convincing." *Id*. Social Security Administration rulings specify the proper bases for rejection of a claimant's testimony . . . An ALJ's decision to reject a claimant's testimony cannot be supported by reasons that do not comport with the agency's rules. *See* 67 Fed.Reg. at 57860 ("Although Social Security Rulings do not have the same force and effect as the statute or regulations, they are binding on all components of the Social Security Administration, . . . and are to be relied upon as precedent in adjudicating cases."); *see Daniels v. Apfel*, 154 F.3d 1129, 1131 (10th Cir. 1998) (concluding the ALJ's decision at step three of the disability determination was contrary to agency rulings and therefore warranted remand). Factors that an ALJ may consider in weighing a claimant's credibility include reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, and "unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment." *Fair*, 885 F.2d at 603; *see also Thomas*, 278 F.3d at 958-59.

*Orn*, 495 F.3d at 635.

In detailing the medical opinions, the ALJ discussed the inconsistencies between Plaintiff's subjective complaints and the corresponding objective evidence as follows.

7

> After carefully considering the evidence, I find [Plaintiff's] medically-determinable impairments can reasonably be expected to cause the alleged symptoms, however the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible to the extent they are inconsistent with [the ALJ's] residual functional capacity assessment.
>
> AR 22.
>
> ...
>
> Dr. Puestow noted no documentation of valley fever in the record. The claimant has some mild non-obstructive coronary disease, and had a cardiac cateriziation in June 2009. One artery had a lesion but the rest were normal as well as the left ventricle. Dr. Puestow concluded that the claimant's heart disease was not suffieicent to result in any functional limitations.
>
> Dr. Puestow did not find any documentation of balance issues in the record, and no neurological or ENT evaluations. The claimant's lumbar and thoracic degenerative disc disease is mild and not associated with radiculopathy. The claimant's alleged arthritis is not documented. The claimant's pre-patellar bursitis should get better over time with conservative treatment. The claimant's alleged sleep apnea is not documented. Dr. Puestow stated that the claimant's impairments, singly or in combination, would not meet or equal a listing.
>
> ....
>
> The claimant's alleged valley fever and arthritis are not medically determinable. There is no documentation in the medical evidence of these impairments.
> AR 21.
>
> ...
>
> I note that Dr. Puestow, the internal medicine medical expert; Dr. Bhangoo, the consultative examiner, and the state agency medical advisors all find the claimant capable of medium work.
>
> AR 23.

Review of Plaintiff's testimony and the record reveals dramatic inconsistencies between Plaintiff's testimony, his prior representations to physicians, and objective medical evidence in the record. As detailed in the summary of the administrative record above, substantial evidence supported the ALJ's reasoning and conclusions regarding Plaintiff's lack of credibility. Comparing the objective medical evidence, the ALJ noted the objective medical evidence did not support Plaintiff's allegations of severe disabling impairments. Objective medical evidence is a "useful indicator to assist [the Commissioner] in making reasonable conclusions about the intensity and persistence of [a claimant's] symptoms and the effect those symptoms, such as pain, may have on [a claimants] ability to work." *See* 20 C.F.R. § 416.929(c)(2). "Although lack of medical evidence

cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis." *Burch*, 400 F.3d at 681.

In assessing Plaintiff's credibility, the ALJ noted that the objective medical evidence indicated that his impairments were not as severe as alleged. AR 20-23.    Plaintiff alleged that he could not work due to heart problems, but as Dr. Puestow noted at the hearing, Plaintiff's alleged coronary problems were mild, as a chest x-ray showed no acute disease and only mild findings. AR 168.  Plaintiff also complained of problems with balance, but Dr. Puestow noted that he found no documentation of any balance issues in the record, nor any neurological or ENT (ear, nose, and throat) related diagnosis which could cause imbalance. AR 21, 383. The ALJ further noted that, Dr. Puestow was unable to verify Plaintiff's claims of arthritis, valley fever and sleep apnea. AR 21.

Further in the record,  Plaintiff reported to Dr. Bhangoo that his main problem was low back pain.  AR 242.  However, Dr. Bhangoo found upon examination, that Plaintiff had no muscle spasms, tenderness, crepitus, effusion or deformities in his back, that his straight leg raising test was negative, and that he had a normal gait and moved without difficulty.  AR 242-45.

The ALJ went on to note that despite Plaintiff's complaints of disabling impairments, Dr. Bhangoo, Dr. Puestow, and Dr. Bonner all opined that Plaintiff could perform a range of medium work. AR 23, 246, 251-56, 387-88. *See Moncada v. Chater*, 60 F.3d 521, 524 (9th Cir. 1995) (finding that a valid specific reason for rejecting Plaintiff's excess pain complaints, among others, was doctor's opinion that plaintiff could perform sedentary work).

Next, as noted at the hearing, Plaintiff  made inconsistent statements to his physicians which further put his credibility in question.   AR 100-01, 256.   *See* 20 C.F.R. § 416.929(c)(4) (In determining the extent to which your symptoms, such as pain, affect your capacity to perform basic work activities, any inconsistencies in the evidence as well as any conflicts between a claimant's statements and the rest of the evidence will be considered). While Plaintiff alleged that he experienced "severe depression" in his disability report, he later reported that he did not have any mental health problems, had never been hospitalized for mental illness, and was not on any psychiatric medication. AR 100-01, 256. *See Thomas*, 278 F.3d at 958 (The ALJ may consider inconsistencies in claimant's testimony when weighing the claimant's credibility).

9

Finally, during the hearing, Dr. Puestow questioned Plaintiff's compliance with his medication and noted that his high blood pressure could be easily controlled with medication and a proper diet. AR 381, 384. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (In weighing a claimant's credibility, the ALJ may consider unexplained or inadequately explained failure to seek or follow a prescribed course of treatment); *Warre v. Comm'r of Soc. Sec.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("[i]mpairments that can be controlled effectively with medication are not disabling for the purpose of considering eligibility for SSI benefits"). The records also indicate that while Plaintiff complained of fatigue and sleep apnea, a sleep study showed that Plaintiff fell asleep without difficulty and that he was responsive to the BiPAP ventilator, indicating his sleep apnea was responsive to treatment and could be controlled. *See Crane v. Shalala*, 76 F.3d 251, 254 (9th Cir. 1996) (ALJ properly considered the claimant's daily activities, treating therapist notes, and evidence suggesting he responded well to treatment in rejecting claimant's testimony).

Based on the foregoing, the Court finds the ALJ's credibility finding was supported by substantial evidence and was sufficiently specific to permit the Court to conclude that the ALJ did not arbitrarily discredit Plaintiff's subjective testimony. Thus, there was no error.

**2.     Conflict Between Dictionary of Occupational Titles and VE Testimony**

Next, Plaintiff challenges the ALJ's step five determination, asserting that the VE's testimony conflicts with the Dictionary of Occupational Titles ("DOT") and the ALJ's RFC. The VE opined that Plaintiff could perform work as a vehicle cleaner, food prep worker, and laundry worker. AR 396-405. Plaintiff argues that the RFC preclusion of "no fine detailed work or constant close work based on visual acuity limitations" precludes him from work as a laundry worker because the DOT states, in part, that the individual "[m]ay mend torn articles, using needle and thread" which in Plaintiff's opinion would require fine detailed work. (Doc. 18 at 16). *See* DOT code 361.685-018.

At step five, the burden shifts to the Commissioner to show that the claimant retains the ability to perform other gainful activity. *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006). To support a step-five finding that a claimant is not disabled, the Commissioner must provide evidence demonstrating that other work exists in significant numbers in the national economy that

the claimant can perform, given his or her age, education, work experience, and RFC. 20 C.F.R. §§ 404.1520(g), 416.920(g).

ALJs routinely rely on the DOT "in evaluating whether the claimant is able to perform other work in the national economy." *Terry v. Sullivan*, 903 F.2d 1273, 1276 (9th Cir. 1990)(citations omitted); *see also* 20 C.F.R. §§ 404.1566(d)(1) (DOT is source of reliable job information), 416.966(d)(1) (same). The DOT is the rebuttable presumptive authority on job classifications. *Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir. 1995). An ALJ may not rely on a VE's testimony regarding the requirements of a particular job without first inquiring whether the testimony conflicts with the DOT, and if so, the reasons therefor. *Massachi v. Astrue,* 486 F.3d 1149, 1152-53 (9th Cir. 2007) (citing Social Security Ruling ("SSR") 00-4p, 2000 SSR LEXIS 8). However, failure to so inquire can be deemed harmless error where there is no apparent conflict or the VE provides sufficient support to justify deviation from the DOT. Id. at 1154 n.19.

Contrary to Plaintiff's contention, with respect to the laundry worker position, there is no inconsistency between the ALJ's RFC and the DOT job description for laundry workers as work as a laundry worker does not conflict with a limitation to "no fine detailed work." The DOT job description indicates that a laundry worker's duties may include the following tasks:

> May dissolve soap granules in hot water and steam to make liquid soap. May mend torn articles, using needle and thread. May sort and count articles in neutralizer solution in vat to precondition articles for washing. May mix dyes and bleaches according to formula, and dye and bleach specified articles. DOT 361.685-018, 1991 WL 672987.

The word "may," means "duties required of workers in . . . some establishments but not others." 1991 WL 645965. Because some laundry workers are not required to perform fine detailed work, the VE's testimony that Plaintiff could perform that occupation is not inconsistent with the DOT. Further, as the vocational expert explained, this job would involve the use of an iron, mangle, or dryer, which would not require the performance of fine detailed work, as Plaintiff contends. AR 401. Finally, the DOT specifically states that only occasional near acuity is required for this position, which is consistent with the ALJ's limitation to no constant close work. AR 22. Accordingly, the ALJ properly found that Plaintiff could work as a laundry worker, and that he was therefore not disabled. AR 24-25.

Plaintiff also argues that the ALJ limited him to no more than "occasional stooping" and "no constant close work based on visual acuity limitations." AR 22. According to Plaintiff, the job of vehicle cleaner requires "frequent...stooping," (Doc. 18 at 18) and the job of food prep worker requires "constant near acuity." *Id.* at 19. As Plaintiff correctly notes, the DOT states that the positions of vehicle cleaner and food prep worker require frequent stooping and constant near acuity, respectively. *See* §§ DOT No. 311.477-014 [Food Prep Worker], DOT 911.687-034 [Vehicle Cleaner]. However, Plaintiff's contention is without merit. A reversal or remand is not required on this basis, because as discussed in detail above, the ALJ properly determined that Plaintiff could perform work as a laundry worker. Therefore, the ALJ met his burden to prove that Plaintiff can perform other jobs in the national economy. Any error in identifying other jobs is considered harmless. *See Peralez v. Astrue,* 2013 U.S. Dist. LEXIS 2280 (C.D. Cal. Jan. 3, 2013) (*quoting Carmickle v. Commissioner of Soc. Sec. Admin*. 533 F.3d 1155, 1162 (9th Cir. 2008).

Accordingly, the vocational expert's testimony constitutes substantial evidence supporting the ALJ's determination that Plaintiff could perform work as it exists in the national economy. The Court will not second-guess the ALJ's reasonable interpretation of such evidence, even if such evidence could give rise to contrary inferences.

## CONCLUSION

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court **DENIES** Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The Clerk of this Court is **DIRECTED** to enter judgment in favor of Defendant Michael J. Astrue, Commissioner of Social Security and against Plaintiff, Armando Garcia.

IT IS SO ORDERED.

**Dated:   March 12, 2013**                              /s/ **Barbara A. McAuliffe**
                                                                  UNITED STATES MAGISTRATE JUDGE